UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LATIFKA H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

23-CV-0275-LJV
DECISION & ORDER

---

On January 23, 2020, the plaintiff, Latifka H. ("Latifka"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On June 29, 2023, Latifka moved for judgment on the pleadings, Docket Item 6; on August 14, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on August 28, 2023, Latifka replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Latifka applied for Supplemental Security Income ("SSI"). SSI is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both disability insurance benefits and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. § 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Latika's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   THE ALJ'S DECISION

On March 10, 2022, the ALJ found that Latifka had not been under a disability since filing her protective application for SSI on January 23, 2020. *See* Docket Item 5. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a). *See id.*

At step one, the ALJ found that Latifka had not engaged in substantial gainful activity since applying for benefits on January 23, 2020. *Id.* at 26. At step two, the ALJ found that Latifka suffered from three severe, medically determinable impairments: epilepsy, a learning disability, and cognitive impairment. *Id.* at 27.

At step three, the ALJ found that Latifka's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 27-28. More specifically, the ALJ found that Latifka's physical impairment did not meet or medically equal listing 11.02 (epilepsy)*, id.* at 28, and that Latifka's mental impairments did not meet or medically equal listing 12.05 (intellectual disorder) and 12.11 (neurodevelopmental disorders)*, id.* at 28. In assessing Latifka's mental impairments, the ALJ found that Latifka was: (1)

3

moderately impaired in understanding, remembering, or applying information; (2) not impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing herself. *Id.* at 29-34.

The ALJ then found that Latifka had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Latifka] can never climb ladders, ropes, or scaffolds. She is limited to occasional concentrated exposure to extreme heat, dangerous moving machinery, unprotected heights, and excessive very loud noise such as the volume of a jack hammer. Work is limited to simple and routine instruction and task jobs consistent with SVP 1 and SVP 2 jobs. Work is limited to low stress jobs, which the undersigned defines as having only occasional changes in the work setting, and no fast-paced assembly line type production work.

*Id.* at 34.

At step four, the ALJ found that Latifka did not have any past relevant work. *Id.* at 41. But given Latifka's age, education, and RFC, the ALJ found at step five that Latifka could perform a significant number of jobs in the national economy. *Id.* Therefore, the ALJ found that Latifka had not been under a disability or entitled to SSI since her application was filed on January 23, 2020. *See* Docket Item 5 at 42.

## II.   ALLEGATIONS

Latifka makes one argument: that the ALJ erred by inadequately considering the opinion of a psychological consultative examiner, Todd Deneen, Psy.D. Docket Item 6-

---

[4] A claimant's RFC is the most she "can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

1.  More specifically, she argues that the ALJ erred in rejecting Dr. Deneen's finding that Latifka suffered from marked limitations in following complex directions and instructions, sustaining concentration, and performing tasks at a consistent pace.  *Id.* at 9.  For the reasons that follow, this Court agrees that the ALJ erred in evaluating Dr. Deneen's opinion and therefore remands for further review.

### III.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019).  As long as the ALJ considers all of the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

For claims filed on or after March 27, 2017, such as Latifka's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.,* 631 F.Supp 3d 1, 7 (W.D.N.Y. 2022) (internal quotation marks omitted) (quoting 20 C.F.R. § 416.920(c)(a)).

Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he or she] finds the medical opinions in the case record." *Id.* (citing 20 C.F.R. § 416.920c(b)).  The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 416.920c(c)(1)-(5).  The ALJ always must explain "how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and the ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* § 416.920c(b)(2).

"Under the Commissioner's own rules, if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" *Dioguardi v. Comm'r of Soc. Sec.,* 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  An "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" id. (quoting *Gecevic v. Sec'y of Health & Human Servs.,* 882 F. Supp. 278, 286 (E.D.N.Y 1995)), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But an ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that '. . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful

6

judicial review.'" *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhard*, 362 F.3d 995, 1002 (7th Cir. 2004)).  Therefore, when "an ALJ . . . chooses to adopt only portions of a medical opinion[, he] must explain his . . . decision to reject the remaining portions." *Raymer v. Colvin,* 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes,* 2015 WL 1524417, at *8*).

Moreover, if an ALJ rejects an opinion or part of an opinion about a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion. While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." (citation and original alterations omitted)).

On December 7, 2020, Dr. Deneen examined Latifka and opined that she was not limited in her ability to "[i]nteract adequately with supervisors, coworkers, and the public[;] sustain an ordinary routine and regular attendance at work[;] maintain personal hygiene and appropriate attire[;] and have awareness of normal hazards and take appropriate precautions."  Docket Item 5 at 552.  He determined that Latifka was mildly limited in her ability to understand, remember, and apply simple directions and instructions; use reason and judgment to make work-related decisions; and regulate emotions, control behavior, and maintain well-being.  *Id*.  But Dr. Deneen found that

7

Latifka was markedly limited in her ability to "[u]nderstand, remember, or apply complex directions and instructions[;] sustain concentration[;] and perform a task at a consistent pace." *Id.*

The ALJ found Dr. Deneen's opinion that Latifka had no or mild limitations to be persuasive, but she rejected Dr. Deneen's opinion about Latifka's "marked" limitations. Docket Item 5 at 39. In making that determination, the ALJ failed to address the factors that the Code of Federal regulations requires. More specifically, in discounting Dr. Deneen's opinion about marked limitations, the ALJ never addressed the supportability factor. *See id.* at 39-40. And while the ALJ paid lip service to the consistency factor, her analysis did little more than state a conclusion without explanation. *See id.*

As to supportability, for example, the ALJ at step four did not even mention the amount of evidence Dr. Deneen presented to support his opinion. *Compare id*. *with* 20 C.F.R. § 416.920c(c). Moreover, although the ALJ had recounted some of Dr. Deneen's exam findings at step three, she did little more than recite those findings and then conclude that Latifka "has at most moderate limitations in her ability to understand, remember, or apply information," *id*. at 30, and "in her ability to concentrate, persist, or maintain pace," *id*. at 32. Indeed, the ALJ did not even try to explain why some of Dr. Deneen's more troubling exam findings—for example, that Latifka's full scaled IQ was in the extremely low range, that she recalled only one of three objects after a delay, that she was not able to count down by threes from twenty, and that she came up with six when asked to add three and four, *see id.* at 548, 551-52—did not support Dr. Deneen's opinion. *See id.* at 39-40; *see also id.* at 29-30, 31-32. So the ALJ's failure to address the supportability of Dr. Deneen's opinion is alone reason to remand. *See Prieto v.*

8

*Comm'r of Soc. Sec.,* 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("[R]ather than analyzing the supportability and consistency factors as applied to Dr. Long's opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that Dr. Long's opinion was 'supported by the medical evidence of record and by her underlying examination.' Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand.") (internal citation omitted).

As to the consistency between Dr Deneen's opinion and the rest of the medical record, the ALJ concluded that Dr. Deneen's opinion was inconsistent with Latifka's ability to "manage her own finances, take care of her children, pass[] her driver's license permit test, and t[ake] GED courses."  *See id*.  Likewise, the ALJ noted that Latifka has been able to give her providers a medical, employment, and education history and to comply with their requests and instructions.  *Id*.  But the ALJ did not explain how someone's ability to manage finances, care for children, or pass a driving permit test means that the person can understand, remember, or apply complex directions and instructions; sustain concentration; and work at a consistent pace.  *See generally Woodford v. Apfel,* 93 F. Supp 2d 521, 519 (S.D.N.Y.2000) (it is well-settled law in the Second Circuit that the ability to perform basic daily activities does not, in itself, contradict a claim of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves [or their children]").  In other words, the ALJ did not explain how Dr. Deneen's opinion was inconsistent with other parts of the medical record.  And while Latifka's taking GED courses might at first blush seem inconsistent with Dr. Deneen's opinion, the fact of the matter is that Latifka was unable

9

to complete those courses, Docket Item 5 at 60—lending further support to Dr. Deneen's opinion.[5]

In addition to giving short shrift to the required supportability and consistency factors, the ALJ also erred by failing to adequately articulate how she assessed Dr. Deneen's opinion regarding Latifka's marked limitations. *Jaleesa H. v. Comm'r of Soc. Sec.,* 580 F. Supp. 3d 1, 8 (W.D.N.Y. 2022) (finding evaluation conclusory when it states only that provider's "opinion is generally consistent and supportive, but not to the extent that [the claimant] has marked limitations with her ability to interact with others."). For example, the ALJ did not explicitly address the "fit between the opinion and [Dr. Deneen's] underlying evidence and explanations." *See Rivera,* 2020 WL 8167136, at *16. Nor did the ALJ build "an accurate and logical bridge" between the evidence and the ALJ's conclusion because the ALJ provided only conclusions—not reasons—for discounting Dr. Deneen's findings. *See Astrue,* 539 F.3d 673.

In sum, although the ALJ was not required to accept everything about which Dr. Deneen opined, *see Younes,* 2015 WL 1524417, at *8, she was required to support her assessment of the opinion with record evidence and to explain her reasoning in discrediting the portion favorable to Latifka. The ALJ failed to do that and instead used inconclusive facts and bald assertions to conclude that Latifka was less limited than Dr. Deneen found. Because the ALJ did not adequately evaluate the medical opinion

---

[5] Moreover, the ALJ did not address the consistency between Dr. Deneen's opinion and at least one other medical opinion in the record. On December 15, 2020, Dr. Lisa Dekeon, Ph.D., found Latifka markedly limited in her ability to understand, remember, or carry out detailed instructions. *See* Docket Item 5 at 98. That finding is consistent with Dr. Deneen's finding of marked limitations in Latifka's ability to understand, remember, or apply complex directions and instructions. The failure to acknowledge the similarities between the two opinions also was error.

evidence under the new regulatory mandates, and because the ALJ did not adequately explain her reasoning in discounting Dr. Deneen's opinion, remand is required.

## **CONCLUSION**

For the reasons stated above, Latifka's motion for judgment on the pleadings, Docket Item 6-1, is GRANTED in part, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9-1, is DENIED.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     February 14, 2024
              Buffalo, New York

                                             *Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE